STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600
Facsimile: (775) 786-7764
E-Mail: steve@harrislawreno.com
Attorney for Debtor/ Plaintiff

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| IN RE:<br><br>ESSEX REAL ESTATE PARTNERS, LLC,<br><br>     Debtor.<br>_____/<br>ESSEX REAL ESTATE PARTNERS, LLC,<br><br>     Plaintiff,<br>v.<br><br>INTEGRATED FINANCIAL ASSOCIATES, INC., a Nevada corporation; and NEXBANK, SSB, a Texas chartered state savings bank,<br><br>     Defendants.<br>_____/ | Case No. 19-51486-btb<br>(Chapter 11)<br><br>Adv. No. 20-05001-btb<br><br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br><br><br>Hrg. Date: May 14, 2020<br>Hrg. Time: 10:00 a.m.<br>Est. Time: ½ day to 1 day<br>Set By: Calendar Clerk |

   Plaintiff ESSEX REAL ESTATE PARTNERS, LLC ("Plaintiff," "Debtor" or "Essex"), Debtor in the above-captioned Chapter 11 case, by and through its attorney STEPHEN R. HARRIS, ESQ. of HARRIS LAW PRACTICE LLC, hereby files its Plaintiff's Motion for Summary Judgment ("Motion") pursuant to Fed. R. Bank. P. 7056 and Local Rule 7056. This Motion is made and based upon the papers and pleadings on file herein and the following

1  Memorandum of Points and Authorities.

**FACTS**

1. Essex Real Estate Partners, LLC is a Nevada limited liability company. On December 27, 2019 (the "Petition Date"), Essex filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Case"), as related to the Chapter 7 bankruptcy case of George F. Holman, Sr. ("Holman") pending in this Court as Case No. 13-52092-btb. No trustee has been appointed in the Chapter 11 Bankruptcy Case and Essex remains a debtor-in-possession herein.

2. Jeri Coppa-Knudson is the duly appointed Trustee for Holman's Chapter 7 bankrupt estate, and Holman's interest in Essex is property of Holman's bankrupt estate pursuant to 11 U.S.C. §541. Jeri Coppa-Knudson is also the duly appointed Manager of Essex.

3. Defendant NEXBANK, SSB, is a Texas chartered state savings bank ("NexBank").

4. Defendant INTEGRATED FINANCIAL ASSOCIATES, INC., is a Nevada corporation ("IFA").

5. As of November 29, 2007, and through the present, Essex was and is the owner of that certain commercial real property located in Henderson, Clark County, Nevada identified as APNs: 191-15-811-001; 191-15-711-022; 191-23-211-003; 191-23-211-004; and 191-14-311-002 (collectively the "Property").

6. On January 28, 2020, Essex filed its Complaint (Adv. DE 1) against the Defendants alleging the following claims for relief: (1) Quiet Title (N.R.S. § 40.010); (2) Wrongful Disparagement/ Slander of Title; (3) Extent, Priority and Validity of Liens; (4) Cancellation of Instrument; (5) Objection to Proof of Claim (11 U.S.C. § 502(a)); and (6) Request for Attorney Fees. This Motion seeks summary judgment on all causes of action stated in the Complaint.

7. On February 13, 2020, Plaintiff's counsel personally served the Summons and Complaint on Defendants' counsel. See Adv. DE 13 and 14.

8. On November 29, 2007, Essex borrowed the total principal sum of Sixty-Six

1  Million Dollars ($66,000,000) under a Term Loan Agreement dated November 29, 2007, and a
2  Deed of Trust Note in the amount of $42,900,000 payable to The Foothill Group, Inc. (the
3  "Foothill Note") and a Deed of Trust Note in the principal amount of $23,100,000 payable to IFA
4  (the "IFA Note") (the Foothill Note and IFA Note are collectively referred to as the "Notes").
5  Copies of both Notes, which collectively total $66,000,000, are attached to the Complaint as
6  **Exhibit A**. The Term Loan Agreement is attached to the Complaint as **Exhibit B.**

7        9.     At all relevant times, NexBank was and is the duly appointed collateral agent and
8  administrative agent for the lenders under the Notes and the Term Loan Agreement.

9        10.    Concurrent with execution of the Notes and the Term Loan Agreement, Essex
10 executed a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture
11 Filing ("Deed of Trust"), for the purpose of securing the obligations under the Notes and Term
12 Loan Agreement. The Deed of Trust was recorded on December 4, 2007, in the Official Records
13 of the Clark County Recorder as Inst.# 20071204-0001853, thus encumbering Essex's Property
14 at the time of recordation. A copy of the Deed of Trust is attached to the Complaint as **Exhibit
15 C**.

16       11.    On November 29, 2007, Holman executed a Guaranty Agreement pursuant to
17 which Holman guaranteed payment of all amounts due under the Notes and the Term Loan
18 Agreement.

19       12.    NexBank, as the collateral agent and administrative agent for the lenders, is the
20 beneficiary of the Term Loan Agreement, Notes and other related documents relevant to the $66
21 million loan (the "Loan").

22       13.    The purpose of the Loan was to finance the purchase and development of the
23 Property based on a Development Agreement dated November 29, 2007, between Essex and KB
24 Home Nevada, Inc.

25       14.    The entire principal and accrued interest owing under the Notes and Term Loan
26 Agreement was wholly due and payable by Essex on the initial Maturity Date of December 1,
27 2008.

28       15.    Essex had the option to exercise a six month first extension of the initial Maturity

1  Date under the Notes and Loan Agreement to June 1, 2009 (the "First Extended Maturity Date"),
2  under certain conditions.

3      16.    Essex had the option to exercise an additional six month second extension of the
4  initial Maturity Date under the Notes and Loan Agreement to December 1, 2009 (the "Second
5  Extended Maturity Date"), under certain conditions.

6      17.    Essex did not exercise the First Extended Maturity Date or the Second Extended
7  Maturity Date.

8      18.    Even if Essex had exercised the First Extended Maturity Date and the Second
9  Extended Maturity Date, the final date that the Notes and Term Loan Agreement would mature
10 and become wholly due and payable under both extensions was December 1, 2009.

11     19.    Essex is informed and believes, and on that basis alleges, that in or about April
12 2008, The Foothill Group, Inc. assigned its rights and obligations under the Term Loan
13 Agreement and the Foothill Note to Highland Crusader Holdings Corporation and Highland
14 Credit Opportunities Holding Corporation. Approximately one day later, each of those entities
15 assigned their respective rights and obligations to the Highland Funds.

16     20.    Additionally, Essex is informed and believes, and on that basis alleges, that at
17 various times after November 29, 2007, fractional beneficial interests under the Notes and the
18 Deed of Trust were assigned to numerous other parties.

19     21.    Notwithstanding the numerous alleged assignments of interests under the Notes
20 and Deed of Trust, NexBank remains the duly appointed collateral agent and administrative agent
21 for all lenders under the Notes and Term Loan Agreement, including all parties receiving
22 fractional beneficial interests under the Notes and the Deed of Trust.

23     22.    The principal and accrued interest under the Notes and the Term Loan Agreement
24 was not timely paid by Essex on or before the Maturity Date of December 1, 2008.

25     23.    On or about June 30, 2008, certain litigation ensued between Essex, Las Vegas
26 Development Associates, LLC, and KB Home Nevada, Inc., in the Eighth Judicial District Court,
27 Clark County, Nevada, as Case No. A566442.

28     24.    Other litigation was initiated on or about November 4, 2008, by IFA against KB

Harris Law Practice LLC
6151 Lakeside Drive
Suite 2100
Reno, Nevada 89511
(775) 786 7600

Home Nevada, Inc., also in the Eighth Judicial District Court, Clark County, Nevada, as Case No. A574976 (Case No. A566442 and Case No. A574976 collectively referred to as the "KB Home Litigations").

25. Nothing in the KB Home Litigations changed the Maturity Date under the Notes and the Term Loan Agreement, and at all times herein, the Notes and the Term Loan Agreement fully matured and became wholly due on December 1, 2008.

26. There are no recorded extensions of the Maturity Date under the Notes and Term Loan Agreement.

27. On June 6, 2016, pursuant to N.R.S. § 361.570, the Ex Officio Tax Receiver for Clark County prepared a certificate for each parcel of the Property on which delinquent taxes had not been paid, authorizing the Clark County Treasurer to hold each parcel of the property described in the certificates for a period of two (2) years unless sooner redeemed by payment of the taxes and accruing taxes, penalties and costs, together with interest on the taxes at the rate of 10 percent (10%) per annum from the date due until paid.

28. Because neither Essex, NexBank, IFA or any of the lenders redeemed the Property by paying all past due taxes, on July 2, 2018, Tax Trustee Deeds with respect to each parcel of the Property were recorded by the Clark County Treasurer in the records of the Clark County Recorder as Instrument Numbers 20180702-0000741, 20180702-0000742, 20180702-0000743, 20180702-0000744 and 20180702-0000745.

29. The effect of the Tax Trustee Deeds is that title to the Property is held in trust by the Clark County Treasurer with Essex as the owner of said Property, until such time as the Property is sold at a public sale or otherwise conveyed pursuant to N.R.S. § 361.595.

30. As of Essex's Petition Date, no sale or conveyance of the Property had occurred by Clark County, and title of the Property remains vested in Essex and Laura B. Fitzpatrick, the Treasurer of Clark County. Attached to the Complaint as **Exhibit D** is a copy of a Preliminary Report prepared by Fidelity National Title Group on October 10, 2019, reflecting the vested title and encumbrances recorded against the Property.

31. Pursuant to N.R.S. §§ 361.585(3) and (4), the Property may be reconveyed out of

Harris Law Practice LLC
6151 Lakeside Drive
Suite 2100
Reno, Nevada 89511
(775) 786 7600

5

trust from the Clark County Treasurer to the legal owner, Essex, upon payment equal to all taxes accrued, together with any costs, penalties and interest legally chargeable against the Property.

32. The Clark County Treasurer filed a Proof of Claim in the Bankruptcy Case on January 15, 2020 (Claim 2-1), attesting to the fact that the Clark County Treasurer is owed $2,597,004.72. Attached to the Complaint as **Exhibit E** is a copy of Claim 2-1.

33. On October 30, 2013, Holman filed his Voluntary Petition for Chapter 7 relief in this Bankruptcy Court, as Case No. 13-52092-btb.

34. On October 16, 2014, NexBank filed an unsecured Proof of Claim (Claim 4-1) in the amount of $174,096,328.82 in Holman's Chapter 7 case. NexBank's Proof of Claim in Holman's case was based on Holman's Guaranty Agreement.

35. On July 3, 2014, an Order Discharging Debtor was entered in Holman's Chapter 7 case, at which time his personal liability under the Guaranty Agreement was discharged pursuant to 11 U.S.C. §727.

36. On January 27, 2016, a Final Decree, Discharge of Trustee and Closing of Chapter 7 Case was entered in Holman's Chapter 7 case.

37. On March 13, 2019, the United States Trustee filed her Ex Parte Motion to Reopen Chapter 7 Case in Holman's Chapter 7 case, for the purpose of administering Holman's ownership interest in Essex.

38. On March 18, 2019, Jeri Coppa-Knudson was once again appointed as Trustee of Holman's re-opened Chapter 7 case.

39. Harris Law Practice LLC was appointed as bankruptcy counsel for Jeri Coppa-Knudson ("Trustee") in Holman's re-opened Chapter 7 case, pursuant to an order entered March 29, 2019.

40. On December 2, 2019, this Court entered an order approving a substitution of counsel whereby Michael C. Lehners, Esq. replaced Harris Law Practice LLC as the Trustee's counsel in Holman's reopened Chapter 7 case. See DE 89 in Case No. 13-52092-btb.

41. On December 27, 2019, Essex filed its Voluntary Petition for Chapter 11 relief initiating this bankruptcy case number 19-51486-btb.

42. On January 6, 2020, NexBank filed a secured Proof of Claim (Claim No. 1) ("NexBank's POC") in this Bankruptcy Case alleging that the sum of $584,462,133.58 is due and owing under the Notes, the Term Loan Agreement and the Deed of Trust.

43. On January 22, 2019, the Debtor/ Plaintiff filed an Application seeking to employ Harris Law Practice LLC as its bankruptcy counsel pursuant to 11 U.S.C. § 327(a). See DE 12 in Case No. 19-51486-btb.

44. N.R.S. § 106.240, colloquially known as Nevada's "Ancient Mortgage Statute," states the following:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

N.R.S. § 106.240.

45. In the ten (10) years since the Notes and the Term Loan Agreement became wholly due and payable by their own terms, neither NexBank, IFA or any other party foreclosed on the Deed of Trust.

46. On January 22, 2020, Plaintiff/Debtor's counsel provided written demand to Defendants' counsel to comply with the provisions of N.R.S. § 107.077 by voluntarily recording a reconveyance of the Deed of Trust because the Notes, Term Loan Agreement and Deed of Trust were conclusively presumed to be regularly satisfied and discharged by N.R.S. § 106.240.

## LEGAL ARGUMENT

### A. Standard for Summary Judgment

Fed. R. Bankr. P. 7056, provides that a motion for summary judgment or partial summary judgment may be filed at any time, but at least 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought. Fed. R. Bankr. P. 7056.

The purpose of Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56 is to secure the just, speedy and inexpensive determination of an action. See Zweig V. Hearst Corp., 521 F.2d 1129 (9th Cir. 1975) (stating that "[s]ummary judgment has, as one of its most important goals, the elimination of waste of the time and resources of both litigants and the courts in cases where a trial would be a useless formality.")

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  Under this standard, the moving party is entitled to summary judgment if the nomoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id.; see also Ilko v. Cal. State Bd. of Equalization (In re Ilko), 651 F.3d 1049, 1052 (9th Cir. 2011) (applying Celotex summary judgment standard to bankruptcy adversary proceeding).  As explained in Celotex, all other facts are immaterial when the nonmoving party fails to submit sufficient proof of an essential element of its case. Id. at 323.

"The proponent of a summary judgment motion bears the burden to show that there are no disputed facts warranting disposition of the case on the law without trial." Younie v. Gonya (In re Younie), 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting Grzybowski v. Aquaslide "N" Dive Corp. (In re Aquaslide "N" Dive Corp.), 85 B.R. 545, 547 (9th Cir. BAP 1987)); In re Jarvar, 422 B.R. 242 (Bankr. D. Mont. 2009)("The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.")

> If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial to or submit an affidavit requesting additional time

> for discovery. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the non-moving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

In re Jarvar, 422 B.R. at 246, quoting Celotex Corp. v. Catrett, 477 U.S. at 330-34 (Brennan dissent)(citations omitted). See also, Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106. S. Ct. 2505 (1986). However, "[a] motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Id. at 249-50. "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. Id. at 630; In re Jarvar, 422 B.R. at 247. "Thus, the Court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." In re Jarvar, 422 B.R. at 247; T.W. Elec. Serv., 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.

In this case, there are no material facts in dispute and the Complaint rests solely on one primary issue that may be determined as a matter of law: were the Notes, Term Loan Agreement

and Deed of Trust deemed statutorily satisfied and discharged ten (10) years after the Maturity Date by operation of N.R.S. § 106.240?

Defendants will attempt to obfuscate and confuse the Court by raising matters wholly unrelated to the actual enforcement of the Notes, Term Loan Agreement and Deed of Trust. In so arguing, Defendants will allege that there are material facts in dispute, but that is not so because the Court need only consider the pertinent loan documents and N.R.S. § 106.240. All facts that are material to the issues in the Complaint are undisputed and straightforward, thus summary judgment is appropriate.

**B. Plaintiff Bears the Burden of Proof**

The party moving for summary judgment must file as an exhibit to its statement of undisputed facts all of the evidentiary documents that are cited in the moving papers. L.R. 7056(a).

The party opposing summary judgment must repeat the moving party's statement of undisputed facts. The opposing party must also file as an exhibit to its statement all evidentiary documents that are cited in the opposing papers. L.R. 7056(c).

At the summary judgment stage, the Court is not to focus on the admissibility of the evidence's form, but rather on the admissibility of its contents. Fraser v. Goodale, 342 F.3d 1032 (9th Cir. 2003), citing Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Fed. R. Civ. P. 56); Deposit Ins. Corp. v. N.H. Ins. Co., 953 F.2d 478, 485 (9th Cir. 1991) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.") (internal quotation marks and citation omitted).

**C. Nevada's Ancient Mortgage Statute Extinguished the Notes, Term Loan Agreement and Deed of Trust**

N.R.S. § 106.240 creates a conclusive presumption that the Notes and Term Loan Agreement were deemed satisfied, and the Deed of Trust discharged, ten years after the debt became wholly due on December 1, 2008. See N.R.S. § 106.240.

The Supreme Court of Nevada has unequivocally held that "the conclusive presumption contained in N.R.S. § 106.240 *clearly and unambiguously applies without limitation to all debts secured by deeds of trust* on real property." Pro-Max Corp. v. Feenstra, 16 P.3d 1074, 1079 (Nev. 2001) (emphasis added). Indeed, the Pro-Max court stated that the statute is so clear and unambiguous, that "no further interpretation is required or permissible." Id. at 1078. "Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." Id. (quoting Erwin v. State of Nevada, 111 Nev. 1535, 1538-39 (Nev. 1995)).

Here, the Notes and Term Loan Agreement became wholly due on the Maturity Date of December 1, 2008. The Notes and Term Loan Agreement also provided for a First Extended Maturity Date of June 1, 2009, under certain conditions, and a Second Extended Maturity Date of December 1, 2009, under certain conditions. The Debtor did not exercise the First Extended Maturity Date or Second Extended Maturity Date, but that is not a material fact because even under the Second Extended Maturity Date, the last date that the Notes and Term Loan Agreement could have been wholly due was December 1, 2009.

Thus, by operation of N.R.S. § 106.240, the debt under the Notes and Term Loan Agreement was deemed satisfied, and the Deed of Trust discharged, ten (10) years after the Maturity Date of December 1, 2008, at the earliest, and ten years after December 1, 2009, at the latest. Either way, the Notes, Term Loan Agreement and Deed of Trust were deemed satisfied and discharged as a matter of law on December 1, 2018, at the earliest, and December 1, 2019, at the latest, and Defendants are forever precluded from collecting the debt under the Notes and Term Loan Agreement or foreclosing on the Deed of Trust. The other result, of course, is that as of the Petition Date, NexBank and IFA are no longer creditors of the Debtor, nor do they have any interest or claim to the Debtor's Property that formerly served as collateral for the Notes and Term Loan Agreement.

**D. N.R.S. § 106.240 is a Statute of Repose, Not a Statute of Limitation, and the Tolling Provision in the Joint Litigation Agreement Is Not Applicable**

As indicated by NexBank's Proof of Claim, NexBank and IFA allege that the tolling

provision in a Joint Litigation Agreement somehow tolled the limitations period under N.R.S. § 106.240. For several reasons, that is not so.

First, the Joint Litigation Agreement states that it is "effective as of the last date of signature hereto (the "Effective Date")." See Exhibit E to Harris Declaration[1]. Yet the Joint Litigation Agreement is not dated anywhere. Notably, there are no dates in the body of the Joint Litigation Agreement itself nor in any of the signature blocks. Section VII of the Joint Litigation Agreement likewise states that:

> In order to preserve the status quo concerning any applicable statute of limitation that may apply to any actual or potential claims between the Parties related to or arising from the subject matter of the Litigation, the Parties agree that any and all statutes of limitation applicable to related claims are hereby *tolled as of this date of this Agreement* until one (1) year after the final disposition of all of the actions constituting the Litigation.

See Joint Litigation Agreement at p. 4, attached as Exhibit E to Harris Declaration (emphasis added).

Since there is no date anywhere in the Joint Litigation Agreement, a material term of the tolling provision is unenforceable because without knowing the Effective Date of the tolling, it is impossible to determine how long the tolling period accrued. Nonetheless, the Court need not resolve that issue because the tolling provision of the Joint Litigation Agreement is irrelevant to this Motion or the application of N.R.S. § 106.240 since it is a statute of repose and not a statute of limitation. Indeed, the tolling provision in the Joint Litigation Agreement only applied to "any applicable *statute of limitation* that may apply to any actual or potential claim . . . ." See Joint Litigation Agreement at p. 4, attached as Exhibit E to Harris Declaration (emphasis added).

Distinguishing the difference between a statute of limitation and a statute of repose is important here. A statute of limitation creates a time limit for suing in a civil case based on the date when the claim accrued. Bank of Am., N.A. v. Madeira Canyon Homeowners Ass'n SFR Invs. Pool 1, LLC, 2019 U.S. Dist. LEXIS 196793 *11, 2019 WL 5963935 (D. Nev. 2019)

---

[1] Declaration of Stephen R. Harris In Support of Plaintiff's Statement of Undisputed Facts In Support of Motion for Summary Judgment, filed concurrently herewith.

(quoting <u>CTS Corp. v. Waldburger</u>, 573 U.S. 1, 9 (2014)). "By contrast, a statute of repose 'puts an outer limit on the right to bring a civil action.'" <u>Id</u>. The statute of limitation and the statute of repose serve different purposes. The statute of limitation requires plaintiffs to pursue diligent prosecution of known claims, whereas statutes of repose "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." <u>Id</u>.

N.R.S. § 106.240 is clearly a statute of repose because it puts a ten year outer limit on the enforceability of a debt secured by a deed of trust against real property, regardless of the claims that may or may not exist or be known in relation to that debt.

Nevada courts agree that N.R.S. § 106.240 is a statute of repose. In applying the above analysis to N.R.S. § 106.240, the <u>Madeira</u> court refused to apply equitable tolling to the ten-year period delineated in N.R.S. § 106.240 because it "is not a statute of limitation, **but a statute of repose**." <u>Id</u> (emphasis added). The <u>Madeira</u> court further held that one of the central distinctions between the statute of limitation and the statute of repose is that "[s]tatutes of repose . . . generally may not be tolled, even in cases of extraordinary circumstances beyond the plaintiff's control." <u>Id.</u> at *12.

Under Nevada jurisprudence, statutes of repose bar actions after a certain period of time, regardless of whether damage or injury has been discovered. By contrast, statutes of limitation foreclose suits after a fixed period of time following an occurrence or discovery of an injury. <u>G and H Associates v. Earnest W. Hahn</u>, 113 Nev. 265, 271 (1997) (<u>citing</u> <u>Allstate Ins. Co. v. Furgerson</u>, 104 Nev. 772, 775 n.2 (1988)). The <u>G and H Associates</u> decision contains some principles of law that are relevant in this case. Specifically, although distinct concepts, the statute of repose must be read in conjunction with the statute of limitations. A claim must be brought within the time set forth in the statute of repose. It also, however, must be brought within the statute of limitations period for the given cause of action. <u>Id.</u> at 272, n.6.

Thus, to be actionable, Defendants' claims under the Notes, Term Loan Agreement and Deed of Trust must be timely under *both* any applicable statute of limitations and the statute of repose codified in N.R.S. § 106.240. Because any claims are now time barred under the statute of repose (N.R.S. § 106.240), any other statutes of limitation are irrelevant since the indebtedness

and Deed of Trust are conclusively presumed satisfied and discharged.

Another important consideration in determining the inapplicability of the Joint Litigation Agreement is that in Nevada a nonjudicial foreclosure is neither a civil nor a criminal judicial proceeding subject to a statute of limitation. Facklam v. HSBC Bank USA, 401 P.3d 1068 (Nev. 2017). In fact, "[f]or over 150 years, the [Nevada Supreme Court's] jurisprudence has provided that lenders are not barred from foreclosing on mortgaged property merely because the statute of limitations for contractual remedies on the note has passed." Id. at 1071. See also, Song v. MTC Fin., Inc., 749 Fed. Appx. 657-58 (9th Cir. 2019)(unpublished)("Under Nevada law, a lender may foreclose nonjudicially on a deed of trust, even where the statute of limitations has run on the corresponding promissory note."); Piazza v. United States Bank Nat'l Ass'n, 2016 Nev. Dist. LEXIS 2472 *4, Case No. A-16-731302-C (8th Jud. Dist. Ct. Nev. 2016)("The Court finds the statute of limitations for a breach of contract claim does not apply to a non-judicial foreclosure. Statutes of limitation apply to the '[c]ommencement of civil actions.'")

Thus, even assuming arguendo that the tolling provision of the Joint Litigation Agreement was enforceable without a beginning date, it would not have tolled a nonjudicial foreclosure of the Notes, Term Loan Agreement and Deed of Trust. The tolling provision would not have prevented the Defendants from enforcing their nonjudicial foreclosure remedies under Nevada law because there is no applicable statute of limitations for foreclosure actions, as long as the underlying debt is unsatisfied and the deed of trust is valid.

Moreover, the plain language of the tolling provision states that it applies to "any actual or potential *claims between the Parties*." Joint Litigation Agreement at p. 4 (emphasis added). As explained by the courts in the cases cited previously, a nonjudicial foreclosure is not a civil or criminal judicial proceeding against any person or party—it is simply an enforcement mechanism against property. That legal principle is widely known by creditors, especially sophisticated creditors like the Defendants, which is why secured lenders may foreclose on real property collateral under a valid deed of trust even after a lender's claim against a debtor has been discharged in bankruptcy.

Lastly, it is clear that under the terms of N.R.S. § 106.240, any *extensions* to a debt secured

by a deed of trust must be "written and recorded" in order to avoid the automatic termination of the security interest and the underlying debt. See N.R.S. § 106.240. In this case, if the tolling provision in the Joint Litigation Agreement intended to extend the Maturity Date or enforceability date of the Notes, Term Loan Agreement and Deed of Trust, then such extension had to be written and recorded. That requirement makes sense from a public policy perspective because the purpose of N.R.S. § 106.240 is to impose an outer limit on a debtor's liability as a matter of law based on ascertainable objective terms within the loan documents and not through subjective interpretation of side agreements.

Accordingly, the Defendants' attempted reliance on the tolling provision in the Joint Litigation Agreement is a red herring and irrelevant to this Court's application of N.R.S. § 106.240 to the Notes, Term Loan Agreement and Deed of Trust.

### E. The Court Must Award Summary Judgment to Plaintiff on Its First Claim for Relief for Quiet Title

In Nevada, a quiet title action may be brought "by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." N.R.S. § 40.010. "In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself." Blanchard v. JP Morgan Chase Bank, 2012 U.S. Dist. LEXIS 41392 *12-13, 2012 WL 1032485 (D. Nev. 2012) (quoting Breliant v. Preferred Equities Corp., 112 Nev. 663 (Nev. 1996)). "Additionally, an action to quiet title requires a plaintiff to allege that she has paid any debt owed on the property." Id. (internal citations omitted).

Here, the Defendants are clearly claiming an adverse estate in the Debtor's Property by filing a secured Proof of Claim in the Debtor's bankruptcy case and failing to reconvey the Deed of Trust that has been extinguished as a matter of law by operation of N.R.S. § 106.240. Plaintiff/Debtor has also alleged that the prior debt owing to Defendants under the Notes, Loan Agreement and Deed of Trust is conclusively presumed satisfied and discharged pursuant to N.R.S. § 106.240; thus, there is no current debt owing to Defendants on the Property. Finally, the Clark County Recorder's public records provide the requisite proof that the Debtor is the "owner" of the Property. See Preliminary Report prepared by Fidelity National Title Company attached

to the Complaint as Exhibit D.

Because all required elements of a quiet title action are met, the Court must grant Plaintiff's First Claim for Relief as a matter of law, and quiet title on the Property by entering a Judgment against Defendants expunging and extinguishing the Notes, Term Loan Agreement and Deed of Trust to remove any cloud from the Property's record title.

### F. The Court Must Award Summary Judgment to Plaintiff on Its Second Claim for Relief for Slander of Title

To succeed in an action for slander of title in Nevada, a plaintiff must prove that the defendant published a false statement disparaging to one's title in land and causing special damage. Higgins v. Higgins, 103 Nev. 443 (Nev. 1987). A showing that vendibility of the land is adversely affected is not required to support an action for slander of title. Summa Corp. v. Greenspun, 98 Nev. 528 (Nev. 1982). Attorneys' fees and costs incurred in defending against a slander of title and removal of the cloud upon title is an element of special damages and sufficient to establish the tort of slander of title. Id. at 532; Horgan v. Felton, 123 Nev. 577, 585 (Nev. 2007).

As alleged in Paragraphs 65-66 of the Complaint, the Defendants had actual knowledge that the Deed of Trust had been discharged by operation of N.R.S. § 106.240. The Deed of Trust falsely creates the impression that the Property is encumbered in favor of Defendants and the Debtor/ Plaintiff cannot sell or monetize its interest in the Property as long as the Deed of Trust remains on record.

Based on the plain and unambiguous language of N.R.S. § 106.240 and the relevant controlling case law identified previously, Defendants do not have any meritorious argument for refusing to reconvey the Deed of Trust. Thus, their actions in maintaining the false and disparaging Deed of Trust on record constitute a slander of Plaintiff's title in the Property. But for Defendants' actions in maintaining the false Deed of Trust on record, Plaintiff would not incur any expenses in removing the cloud from its title.

Accordingly, the Court must grant Plaintiff's Second Claim for Relief as a matter of law by entering judgment against the Defendants and awarding Plaintiff compensatory and punitive

damages in an amount to be proven in later proceedings.

### G. The Court Must Award Summary Judgment to Plaintiff on Its Third Claim for Relief Determining the Extent, Priority and Validity of Defendants' Lien is Zero

As Plaintiff has argued previously, the Notes, Term Loan Agreement and Deed of Trust in favor of Defendants were conclusively presumed satisfied and discharged as a matter of law by operation of N.R.S. § 106.240 on December 1, 2018--ten years after the debt thereunder became wholly due. Thus, as of December 2, 2018, the Defendants no longer had an enforceable lien against the Debtor's Property.

Pursuant to Fed. R. Bankr. P. 7001(2), this Court may determine the extent, priority and validity of Defendant's purported liens through this adversary proceeding. As of the Petition Date, the Defendants no longer had an enforceable lien in Debtor's Property.

Accordingly, the Court must grant Plaintiff's Third Claim for Relief as a matter of law by entering a judgment in this case determining that the Notes, Term Loan Agreement and Deed of Trust are satisfied and discharged and do not create a lien against Debtor's Property.

### H. The Court Must Award Summary Judgment to Plaintiff on Its Fourth Claim for Relief for Cancellation of Instrument

Because the Defendants have failed and refused to voluntarily reconvey the Deed of Trust, and the Notes, Loan Agreement and Deed of Trust are satisfied and discharged by operation of N.R.S. § 106.240, the Court is empowered by 11 U.S.C. § 105 and Fed. R. Bankr. P. 7070 to enter its judgment or order cancelling the Deed of Trust to remove any cloud from the Debtor's Property. The cloud on the Debtor's Property impairs property of the estate and frustrates the Bankruptcy Code's purpose of facilitating an orderly distribution of assets.

As a result, the Court must grant Plaintiff's Fourth Claim for Relief as a matter of law by entering a judgment in this case cancelling the unenforceable Deed of Trust.

### I. The Court Must Award Summary Judgment to Plaintiff on Its Fifth Claim for Relief by Sustaining Its Objection to NexBank's Proof of Claim

As stated in paragraphs 89-92 of its Complaint, NexBank filed as Claim No. 1 ("NexBank's POC") a Proof of Claim alleging a secured claim against the Property in the amount

Harris Law Practice LLC
6151 Lakeside Drive
Suite 2100
Reno, Nevada 89511
(775) 786 7600

of $584,462,133.58, based on the Notes, Term Loan Agreement and Deed of Trust.

Because the Notes, Term Loan Agreement and Deed of Trust were conclusively presumed satisfied and discharged on December 1, 2018, by operation of N.R.S. § 106.240, as of the Petition Date NexBank did not have any allowed claim in Debtor's Chapter 11 case.

11 U.S.C. § 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §502(a).

Moreover, 11 U.S.C. § 502(b) provides that:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>
>   (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

11 U.S.C. § 502(b)(1). In its Complaint, the Debtor has objected to NexBank's POC, thus satisfying the procedural obligation under Section 502(a). This Court must disallow NexBank's POC in its entirety pursuant to 11 U.S.C. §502(b)(1) because NexBank does not have an enforceable claim against the Debtor or its Property as of the Petition Date, since the Notes, Term Loan Agreement and Deed of Trust were conclusively presumed satisfied and discharged after December 1, 2018, by operation of N.R.S. § 106.240.

Accordingly, the Court must grant Plaintiff's Fifth Claim for Relief as a matter of law by entering a judgment in this case pursuant to 11 U.S.C. § 502(b)(1) disallowing NexBank's POC in its entirety and determining that NexBank does not have an allowed secured or unsecured claim in Debtor's bankruptcy case.

**J. The Court Must Award Summary Judgment to Plaintiff on Its Sixth Claim for Relief for Attorneys' Fees**

As stated in Paragraphs 93 – 101 in the Complaint, the Defendants' actions in failing to

voluntarily reconvey the Deed of Trust in contravention of N.R.S. § 106.240 constitutes false statements that disparage and slander Plaintiff's interest in the Property. Prior to the filing of the Complaint, Defendants also had actual knowledge that the Deed of Trust had been discharged by operation of N.R.S. § 106.240 based on a letter from Debtor's counsel, and they were each under a duty under the common law not to cause false statements to be published against Debtor's Property. See Summa Corp., 98 Nev. at 530-31. But for Defendants' actions in maintaining the false Deed of Trust recorded against Debtor's Property, Plaintiff would not incur any expenses in removing the cloud from its title. Plaintiff is therefore entitled to special damages, including attorneys' fees and costs in bringing and maintaining this action, by reason of Defendants' slander of Plaintiff's title in the Property. Id.

Additionally, Defendants had a statutory duty to execute a deed of reconveyance pursuant to N.R.S. § 107.077.

N.R.S. § 107.077(3) provides for an award of $1,000.00, plus reasonable attorney's fees and costs of bringing the action, and any actual damages caused by failure to comply with the provisions of N.R.S. § 107.077 and for reasonable attorney's fees and costs of bringing the action for actual damages.

Debtor's counsel provided written demand to Defendants' counsel on January 22, 2020, to comply with the provisions of N.R.S. § 107.077 by voluntarily recording a reconveyance of the Deed of Trust, but Defendants failed and refused to comply. Defendants' willful failure to reconvey the Deed of Trust necessitated the filing of the Complaint and this Motion, and Debtor is therefore entitled to an award of $1,000.00, any actual damages, and its reasonable attorneys' fees and costs of bringing this action.

Accordingly, the Court must grant Plaintiff's Sixth Claim for Relief by entering its judgment awarding Plaintiff $1,000.00, plus actual damages and its attorneys' fees and costs incurred in bringing this action in an amount to be determined in later proceedings.

## **CONCLUSION**

WHEREFORE, Plaintiff Essex Real Estate Partners, LLC, prays for summary judgment against Defendants, and each of them jointly and severally, on all six claims for relief in its

1  Complaint, with the amount of Plaintiff's actual monetary damages and attorneys' fees and costs
2  to be determined in a subsequent evidentiary hearing; and for such other and further relief as this
3  Court may deem just and proper.

4      DATED this 28th day of February, 2020.

    STEPHEN R. HARRIS, ESQ.
    HARRIS LAW PRACTICE LLC

    */s/ Stephen R. Harris*
    _____
    Attorney for Debtor/Plaintiff
    Essex Real Estate Partners, LLC